## Maggie Barnes, Plaintiff in Error, v. City of Chicago, Defendant in Error.

### Gen. No. 26,973.

1.  MOBS—*act for suppression of violence as remedial and penal.* The act to suppress mob violence, in force July 1, 1905 (Cahill's Ill. St. ch. 38, ¶¶ 537-546), penalizes not only persons composing the mob, but the city wherein it does violence, and in this respect the act is both remedial and penal, remedial as far as it provides for compensation to the injured parties, penal as far as it renders the city responsible for the results of mob violence.

2.  MOBS—*construction of act for suppression of violence.* An act to suppress mob violence is a police regulation, and should be construed with reference to effecting its object, which, among other things, is to hold a community responsible for the effects of mob violence within it.

3.  MOBS—*liability of city for injury by mob to person other than one sought to be injured.* Sections 1 to 5 of the act to suppress mob violence, in force July 1, 1905 (Cahill's Ill. St. ch. 38, ¶¶ 537-542), considered with reference to the claim of a city, in an action by a mother for the death of her son, that the act applied only in cases involving the person against whom the mob assembled, and held that such a strict construction as would cause the phrase "such other person" in section 5 to be carried back to section 1 for its antecedent and thus make the act relate back to the particular person supposed to have been guilty of a violation of the law to whom the mob purposed to offer violence, or to exercise correctional powers over, would leave the words "or persons," immediately following, with doubtful reference, and, if given to the same words in section 4, would limit the felony to damaging the property of or injuring the particular person against whom the mob assembled for violence and none other; and *held* that plaintiff was entitled to recover, although her son was not the person whom the mob assembled to offer violence.

4.  MOBS—*liability of city for lynching of one person by mob assembled to injure another.* Where in an action by the mother of a son, lynched by a mob, against a city, predicated upon "An Act to suppress mob violence," in force July 1, 1905 (Cahill's Ill. St. ch. 38, ¶¶ 537-542), where defendant demurred on the ground that the declaration was defective in failing to allege that the mob assembled to offer violence to the particular person who was lynched, *held* that any construction limiting the act to a recovery for the death of or injury to the person for whose correction or

lynching the mob assembled was violative of the intent and purpose of the act as defined in its very title, and that as it was inferable from the declaration that the assemblage was for the unlawful purpose of exercising violence or correctional powers upon any party lynched as the result of such assemblage, the demurrer was improperly sustained.

Error to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed April 18, 1922.

EDWARD H. MORRIS and ALVA L. BATES, for plaintiff in error.

SAMUEL A. ETTELSON, for defendant in error; CHARLES E. PEACE, BERTHOLD A. CRONSON and CARL F. LUND, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error brought an action against the City of Chicago predicated upon "An act to suppress mob violence" in force July 1, 1905. (Chapter 38, pars. 537 to 542, Cahill's Ill. St.) The city's demurrer to the declaration was sustained and plaintiff elected to stand by her narr.

The declaration was in two counts. The first charged an assemblage of five or more persons in said city for the unlawful purpose of offering violence to the person and property of any one supposed to have been guilty of a violation of the law, and for the purpose of exercising correctional and regulative powers on any person or persons by violence and without lawful authority, and that said mob, composed of such persons, while so assembled did fall upon, lynch, shoot, wound and kill one John W. Simpson, the son of plaintiff, a single and unmarried man, who left plaintiff, his mother and lineal heir, who prior to his death was dependent upon him for support.

The second count set forth the same matters, with averments that Simpson was a police officer, exercising his duties as such when so victimized by the mob.

Consideration of the argument as to the sufficiency of the declaration requires setting forth portions of the act.

Section 1 defines a mob to be:

"Any collection of individuals, five or more in number, assembled for the unlawful purpose of offering violence to the person or property of any one supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers or regulative powers over any person or persons by violence, and without lawful authority."

Section 3 reads:

"Any person or persons who shall compose a mob, with the intent to inflict damage or injury to the person or property of any individual charged with a crime, or, under the pretense of exercising correctional powers over such person or persons by violence, and without authority of law, shall be subject to a fine," etc.

Section 4 reads:

"Any person or persons, composing a mob under the provisions of this act, who shall by violence inflict material damage to the property or serious injury to the person of any other person upon the pretense of exercising correctional powers over such person *or persons,* by violence, without authority of law, shall be deemed guilty of a felony  *  *  *; and *any* person *so suffering* material damage to property or injury to person by a mob shall have an action against the county or city in which such injury is inflicted, for such damages as he may sustain  *  *  *.''

Section 5 reads:

"The surviving spouse, lineal heirs, or adopted children of any *such other person or persons* who, before the loss of life, were dependent for support upon any other person who shall hereafter suffer death by lynching at the hands of a mob, in any county or city of this State, may recover from such county or city

damages for injury sustained by reason of the loss of life of such person, to a sum not exceeding $5,000."

It is contended by counsel for the city that the declaration is defective in that it does not allege that the mob assembled for the unlawful purpose of offering violence, etc., to said Simpson, "supposed to have been guilty," etc., or, "for the purpose of exercising correctional powers or regulating powers over said Simpson by violence."

It is argued that "such other person" suffering death by lynching, as referred to in section 5, relates back to the particular person supposed to have been guilty of a violation of the law to whom the mob purposed to offer violence, or to exercise correctional powers over; in other words, that the declaration should allege that the mob assembled to offer violence to the particular person who was lynched.

We think this construction violates the intent and purpose of the act, as defined in its very title, "An Act to suppress mob violence." As measures to that end it penalizes by a fine any of the persons composing the mob, whether injury results or not, and by imprisonment in the penitentiary if damage to property or serious injury to the "person of any other person," etc., results, and, furthermore, gives a right of action against the municipality, in which any such injury is inflicted, to "any person so suffering" such damage or injury, and to certain dependents of a person lynched by the mob. In other words, the act penalizes not only persons composing the mob but the city wherein it does violence. In this respect the act is both remedial and penal; remedial so far as it provides for compensation to the injured parties, and penal so far as it renders the city responsible for the results of mob violence.

Such an act is a police regulation, and should, of course, be construed with reference to effecting its object, which, among other things, is to hold a com-

munity responsible for the effects of mob violence within it. It is said in *Allegheny County v. Gibson,* 90 Pa. St. 397, 418, where the subject is ably discussed, that the theory upon which penalizing a municipality in such a case is based is that with proper vigilance acts of violence may be and ought to be prevented, and that a political subdivision of the State should be held responsible for the public peace and protection to life and property from mob violence.

We fail to see in the act a purpose to limit its provisions in case of lynching to a dependent of the particular person lynched. The result of lynching is no less serious to the community, or persons affected, whether the mob expends its violence on a particular party against whom it purposes vengeance, or some innocent bystander. The instances are not few where mobs have taken into their own hands the punishment of one who was unquestionably guilty of the crime which provoked the assemblage. But can it be said that the dependent of such criminal is more entitled to consideration and compensation, so far as the act is remedial in its nature, than a dependent of an innocent party, or that the purpose of the act, the suppression of mob violence, will be conserved in one case and not in the other? We think the restrictive construction of the act by the city's counsel in this respect is not in harmony with its manifest purpose to impose responsibility upon the community itself for mob violence of that character.

The contention of defendant in error is that the phrase "such other person," in section 5, should be carried back to section 1 for its antecedent. Such strict construction would leave the words "or persons," immediately following, with doubtful reference, and, if given to the same words in section 4, would limit the felony to damaging the property of or injuring the particular person against whom the mob had assembled for violence and none other. It would be

strange, indeed, if such a construction should prevail when the following part of section 4 gives the right of action against the county or city for such damage or injury to "any person so suffering" damage to property or personal injury. It must be admitted that a less cumbersome phraseology might have been employed. But as "such other person," referred to in section 4, is a party whose property or person is injured, and the same phrase in section 5 refers to a person "lynched," it is manifest the two phrases cannot refer to the same person. While the language is somewhat ambiguous it should be interpreted with reference to the intent and purpose of the act. If the word "other" in section 5, which seems to have no logical connection, be treated as surplusage, the construction of the section is simple and conforms to that contended for by plaintiff in error. In fact its ambiguity is emphasized when considered in connection with the same word in the relative clause following it, to wit, "upon any *other* person who shall hereafter suffer death by lynching at the hands of a mob."

Such construction is also in conformity with the elementary principle that a person must be held to intend the natural consequences of his act. On that principle the victim of mob violence may be said to be the object of the unlawful purpose of its assemblage.

In an action brought under a similar law to recover against a county for the lynching of one Mitchell, in *Champaign County Com'rs v. Church,* 62 Ohio St. 318, 348, the jury were charged that the lynching did not raise a presumption of law that the mob assembled with that intent. The court held the instruction was erroneous, referring to the ancient doctrine of the criminal law, that although the assembly were lawful, the persons assembled might unite in unlawful conduct and thus become rioters. So we think it is inferable from the declaration that the assemblage was for the unlawful purpose of exercising violence or correctional

powers upon any party lynched as the result of such assemblage. Hence we think the court erred 'in sustaining the demurrer. Accordingly the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and MORRILL, J., concur.